IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DERON W. KING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | No. 5:11-CV-00005 (CAR) |
| BUTTS COUNTY, GEORGIA, and | : | |
| VAN G. WHALER, in his individual | : | |
| capacity, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Deron W. King, a former employee of Defendant Butts County, Georgia, claims that his supervisor, Defendant Van G. Whaler, discriminated against him on the basis of his race by (1) failing to promote him; (2) suspending him with pay on November 24, 2008; (3) extending his suspension with pay on December 1, 2008; (4) extending his suspension without pay on January 5, 2009; and, finally, (5) terminating his employment on January 20, 2009.  He also claims that Defendants used these suspensions and his ultimate termination as retaliation for submitting a charge of discrimination to the United States Equal Employment Opportunity Commission ("EEOC"), all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981.  In opposition, Defendants filed the instant

Motion for Summary Judgment [Doc. 25].    For the reasons addressed below,
Defendants' Motion for Summary Judgment is **GRANTED**.

**LEGAL STANDARD**

Summary judgment is proper if the movant "shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law."[1]   The moving party "always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying those portions of the
pleadings, depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any, which it believes demonstrate the absence of a genuine issue
of material fact" and that entitle it to a judgment as a matter of law.[2]   If the moving
party discharges this burden, the burden then shifts to the nonmoving party to go
beyond the pleadings and present specific evidence showing that there is a genuine
issue of material fact.[3]

The Court must view the facts, and any reasonable inferences drawn from those
facts, in the light most favorable to the party opposing the motion.[4]   "The inferences,
however, must be supported by the record, and a genuine dispute of material fact

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Catrett*, 477 U.S. at 323 (internal quotation marks omitted).
[3] *See* Fed. R. Civ. P. 56(e); *see also Catrett*, 477 U.S. at 324-26.
[4] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

requires more than 'some metaphysical doubt as to the material facts.'"[5]   In cases where opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[6]   A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[7] "The court many not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[8]

## BACKGROUND

For purposes of this Motion, the facts taken in the light most favorable to King, the non-movant, are as follows:

### King's Initial Employment with Butts County and First EEOC Charge

As of late 2007, Butts County, Georgia, ("Butts County" or "the County") employed a County Administrator and two Deputy County Administrators: Deputy County Administrator for Development and Deputy County Administrator for Operations.[9]   One deputy position was held by Michael Brewer ("Brewer"), a white

---

[5] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).
[6] *Pourmoghani-Esfahani v. Gee*, 625 F.2d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380) (2007)).
[7] *Id*. (internal quotation marks omitted).
[8] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[9] Brewer Decl., ¶ 3 [Doc. 25-3]

male; the other position had been vacated by Steven Lease, also a white male.[10]  Steven Lease left Butts County and the deputy position after three years of employment and after initially being employed as the Director of Community Development.[11] Accordingly, the County posted a job opening for the vacant deputy position in December 2007.[12]

Deron W. King ("King"), a black male, first contacted the County in early 2008 to apply for the open deputy position.[13]  On March 8, 2008, then-County Administrator Van Whaler ("Whaler"), a white male, wrote to King and advised him that he was a finalist for the "Deputy Administrator" position.[14]  However, between that time and April 16, 2008, the Butts County Board of Commissioners decided that a deputy position would be earned, and any person who was going to be placed into that position would be evaluated "prior to being considered for promotion"—like Steven Lease, King's predecessor, and Brewer, the County's other deputy, had been.[15]

Accordingly, Brewer contacted King by telephone and informed him that the County was offering him the position of Director of Community Development instead of the vacant deputy position.  During this call, Brewer told King that he would serve as

---

[10] *Id.* at ¶ 4.
[11] *Id.* at ¶¶ 5-6.
[12] Brewer Dep., Vol. I, at Exs. 13-14 [Doc. 33].
[13] *Id.* at Exs. 13-16.
[14] Defs. Ex. 16 [Doc. 28-2].
[15] Brewer Dep., Vol. I, 151:10-25 [Doc. 33].

a director for a short period of time, and that he would be promoted to Deputy County Administrator, with its added compensation and duties, after a short "trial period."[16] King received a written offer to this effect on April 16, 2008, and he began his probationary employment as Director of Community Development on May 12, 2008.[17]

On August 8, 2008, Whaler met with King to discuss a three-month performance review.[18]  During the meeting, King asked Whaler why the performance evaluation was being done at three months and stated that he was told his first evaluation would occur after six months on the job.[19]  In response, Whaler tore up the evaluation and told King the evaluation would be postponed.[20]  The same day, Whaler gave King a 5% pay raise, which he indicated was the result of King's completion of a "3 month working test."[21]

A few weeks later, on August 27, 2008, Whaler announced at a staff meeting that King would be "promoted" and given the "titles and duties" of Deputy County Administrator effective September 2, 2008.[22]  However, on September 2nd, Whaler sent King a letter which explained that he would remain a director; King's position would

[16] King Dep., 37:7-38:11 [Doc. 27].

[17] The parties spend some time discussing King's initial pay, subsequent raise, and an early performance evaluation that have no real bearing on King's claims as he presents them in response to Defendants' Motion for Summary Judgment.  As such, the Court does not fully develop these facts in this section or the Order at large.

[18] King Dep., 82-89 [Doc. 27]; Whaler Dep., Vol. II, Ex. 29 at 2 [Doc. 43-4].

[19] King Dep., 85:2-12 [Doc. 27].

[20] *Id.*

[21] Whaler Dep., Vol. II, Ex. 26 [Doc. 43-1].  This made King's salary as a first-year director $285.00 higher than Brewer, who, at the time, was serving as a deputy in his twenty-third year with the County.  *Id.* at Ex. 29 at 2 [Doc. 43-4].

[22] *Id.*

not be reclassified to Deputy County Administrator.[23]   Unbeknownst to King, Whaler also advised Brewer, a white male, that his title would be reclassified from deputy to Director of Operations.[24]

Shortly thereafter, King filed his first EEOC Charge of Discrimination on September 19, 2008, in which he alleged that Butts County refused to increase his pay, despite being assigned the duties of a Deputy County Administrator, due to his race. As stated in his EEOC Charge, King believed he was a victim of race discrimination because (1) he applied for a deputy position; (2) he was offered a lesser position "with the stipulation that at some time in the future the Deputy County Administrator duties would be added to this position with a commensurate increase in pay"; (3) he was assigned the duties of a deputy in September 2008 without an increase in pay; and (4) the previous deputy, a white male, "was placed directly into his position with full salary."[25]   Whaler became aware of King's EEOC Charge on September 29, 2008.[26]

**Artistica Stodghill's Allegations**

On or after November 18, 2008, a receptionist/clerk, Artistica Stodghill ("Stodghill"), a black female, complained to a coworker, Jessica Reynolds ("Reynolds"),

[23] King Dep., Ex. 42 [Doc. 45-3].
[24] Defs. Ex. 43 [Doc. 28-8].
[25] King Dep., Ex. 44 [Doc. 45-5].
[26] Whaler Dep., Vol. II, Ex. 28 [Doc. 43-3].

about certain assignments from King.[27]   Reynolds then shared this information with another employee, Christy Lawson ("Lawson").  Lawson, in turn, told Brewer about Stodghill's conversation with Reynolds.  Brewer then asked Lawson to talk to Stodghill about her issues.   At Brewer's instruction, Lawson, accompanied by Stodghill's immediate supervisor, Billy Singley ("Singley"), interviewed Stodghill.[28]

Lawson and Singley generated a written report of the following:   (1) on Stodghill's second day with the County, King told her not to trust anyone or converse with any other employees; (2) King claimed everyone in the office was racist;  (3) Stodghill felt like King was trying to manipulate her because of their shared race and repeatedly told her that they needed to "stick together"; (4) King consistently reminded her that she was a probationary employee and, as a director, he could hire and fire her; and (5) King had Stodghill "research" at least two grants and, for one, he directed her to write a memorandum for a grant and then altered some of the details "to make it look like he had done all the research."[29]

Most recently, King gave Stodghill an assignment on November 18, 2008, to read information pertaining to the "Fire Fighters Budget/Insurance" and provide "a response

---

[27] Stodghill Dep., Vol. I, 32:8-16 [Doc. 39]; Brewer Dep., Vol. I, 21:12-22:16 [Doc. 33]; Def. Ex. 1 at 9 [Doc. 28].
[28] Brewer Dep., Vol. I, 21:12-23:21 [Doc. 33]; Stodghill Dep., Vol. I, 75:14-16 [Doc. 39].
[29] Def. Ex. 1 at 9 [Doc. 28].

and/or suggestions."[30]   When Stodghill explained that she "did not fully understand what she was reading," King became "ugly and nasty to her" because he was not going to meet the assignment deadline without her assistance.[31]   Stodghill reiterated her confusion, and King asked her if "anyone else sitting in her position [had] been black" before telling her "that no one else wanted her in that position because of that fact."[32] The same day, a customer asked for assistance from Roger Jewell, another County employee, and instead King tried, unsuccessfully, to answer the question.   Stodghill then retrieved Roger Jewell to answer the question, and "once everyone left the area [King] told her never [to] do that again because it makes it look like a black man does not know anything."[33]

When Whaler returned from vacation on November 24, 2008, Brewer informed him of Lawson and Singley's meeting with Stodghill.[34]   The same day, Whaler requested a meeting with Stodghill and Brewer to discuss her concerns about King.[35]   At this meeting, Whaler asked Stodghill to send him a written statement documenting her concerns.[36]   Whaler did not tell Stodghill that he intended to investigate her allegations

---

[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] *Id*. at 11
[34] Brewer Dep., Vol. I, 28:8-21 [Doc. 33].
[35] *Id*. at 28:19-11.
[36] *Id*.; Defs. Ex. 1 at 28 [Doc. 28].

as a "complaint" against a coworker.[37]

Sometime later, Whaler called King into his office.  At the meeting, Whaler presented King a notification letter, in which he indicated that "a complaint has been filed with the County Administrator against you in your capacity as the department manager of Community Development.  The employee making the complaint is Artistica Stodghill….   A complaint of this nature is considered valid for pursuit of investigation."[38]   The letter explained that King could be placed on administrative suspension during the course of the investigative process.  It additionally cautioned King not to retaliate against Stodghill "in any way whatsoever."[39]

King requested Stodghill's presence several times over the course of the meeting, and he twice expressed his intent to talk with Stodghill personally.[40]   Whaler denied each request to summon Stodghill, stating that he would first "develop the

---

[37] Stodghill Dep., Vol. I, Ex. 23 at 05:23 [Doc. 39-1].  As other evidence of discrimination, King attempts to submit Stodghill's statement that Butts County "used" her to make it appear "that his own kind got rid of him, not us … and that's exactly how I feel from the bottom of my heart."  Stodghill Dep., Vol. I, Ex. 23, 07:40-8:00, 10:45-11:15 [Doc. 39-1].  Stodghill's unsubstantiated "feeling," without any factual support, is not evidence of discriminatory intent.  *See, e.g., Grady v. BellSouth*, 160 F. App'x 863, 864-65 (11th Cir. 2005) (rejecting supervisor's allegations of defendant's discriminatory animus as "speculative and conclusory" at most).  Likewise, the Court dispenses with Commissioner Eddie Travis's belief that Whaler used Stodghill to "take [King] out."  Travis Dep., 10:19-15 [Doc. 41].  The cited record does not provide any viable, factual basis for Travis's conclusion.  Instead, he merely states that "they just looked at me in the face" after "they" mentioned Stodghill's race and Travis voiced his concern that "they" were taking Stodghill's statements "to the extreme."  *Id.* at 10:5-25.  These vague, speculative statements are not sufficient to establish King's prima facie case or otherwise defeat Defendants' Motion for Summary Judgment.
[38] Brewer Dep., Vol. I, 37:6-13, Ex. 2 [Doc. 33-2].
[39] Brewer Dep., Vol. I, Ex. 2 [Doc. 33-2].
[40] King Dep., Ex. 1, 09:40-09:45 [Doc. 45-1].

9

[investigative] process"; he did not explicitly forbid King from talking to Stodghill after the meeting concluded.[41]

When King left the meeting with Whaler and Brewer, he was not on administrative leave, and he had not received any explicit written or verbal instruction prohibiting him from discussing the matter with Stodghill directly.[42]   Accordingly, he walked directly to Stodghill's desk and directed her to his office.[43]   During their brief conversation, King apparently "questioned [her] about what is this complaint that you filed against me."[44]   Another staff member informed Whaler and Brewer that King had removed Stodghill from the front desk, leaving the lobby unstaffed.[45]   Whaler immediately instructed Brewer to stop the meeting between the two, which he did.[46]   Shortly thereafter, Whaler met with King a second time to inform King that he was being placed on paid administrative leave, effective immediately, through January 5, 2009.[47]

Two days later, King responded to Stodghill's statement with his own description of the events, and he filed a separate grievance against Whaler for his

---

[41] *Id*. at 09:10, 23:16, 12:55, 14:00, 14:27, 16:05.
[42] Brewer Dep., Vol. I, 39:11-41:17, 87:9-18 [Doc. 33].
[43] King Dep., 158:6-20 [Doc. 27].
[44] Stodghill Dep., Vol. I, 150:9-19 [Doc. 39].  The parties dispute whether King "threatened" her job during this meeting.
[45] Brewer Dep., Vol. I, 32:2-6 [Doc. 33].
[46] *Id*. at 32:9-22.
[47] *Id*. at 34:2-36:4.

actions on November 24th.   King formally requested that the County hire an independent investigator.[48]

## Suspension and Investigation

Butts County retained Mae Okwandu, a former investigator for the Georgia Commission on Equal Employment Opportunity Office, to investigate both the allegations against King and King's grievance against Whaler.  Okwandu took witness statements from King, Stodghill, Brewer, and Whaler, and she reviewed various internal memoranda, including the parties' respective descriptions of Stodghill's assignments, the notification letter Whaler handed to King on November 24th, the taped conversation of King's meeting with Whaler and Brewer, Stodghill's e-mail to Whaler, and the initial report generated by Lawson and Singley.[49]  She did not review the contested assignments themselves.[50]

Okwandu completed her reports on or about December 17, 2008, when she concluded that "none of the aspects of [King's] assignments should have been assigned to an entry-level employee."[51]  Her reports did not recommend any specific disciplinary measures.[52]   Okwandu's reports did not substantiate King's claim against Whaler.[53]

---

[48] Defs. Ex. 1 at 16-17, 25-26 [Doc. 28].
[49] *See generally* Brewer Dep., Vol. I, Exs. 1 and 8 [Doc. 33-1,8].
[50] *See id.*
[51] *Id.* at Ex. 8.
[52] *See generally id.* at Exs. 1 and 8.
[53] *See generally id.* at Ex. 1.

During the pendency of the investigation, King remained on paid administrative leave.[54]

King and Whaler met on January 5, 2009, to discuss the results of the investigation and to allow King "an opportunity to be heard before any final decision [was] rendered."[55]   King submitted a memo to Whaler and the EEOC investigator the same day explaining that he should be cleared of any wrongdoing based on the information contained in the investigative report.[56]   Over King's objections, Whaler suspended King without pay for ten days effective January 6, 2009.   In the accompanying notice, Whaler clarified that King was "expected to return to work on Tuesday, January 20, 2009."[57]   By memo dated January 7, 2009, King notified Whaler that he believed his suspension was retaliatory and was requesting the EEOC to review Whaler's disciplinary actions taken against him.[58]

**Termination for Failure to Return to Work**

King's ten-day suspension was scheduled to end on January 20, 2009.[59] Accordingly, Whaler requested that King meet him at Chick-fil-A in McDonough, Georgia, on January 19, 2009, to discuss King's return.   At this meeting, Whaler informed King about an upcoming restructuring plan under which King's position,

---

[54] King Dep., 163:12-16 [Doc. 27].
[55] King Resp., Ex. 1 [Doc. 46-1].
[56] King Dep., Ex. 41 [Doc. 45-2].
[57] Brewer Dep., Vol. I, Exs. 10 and 11 [Docs. 33-10, 11].
[58] Whaler Dep., Vol. III, Ex. 49 [Doc. 44-2].
[59] Brewer Dep., Vol. I, Ex. 11 [Doc. 33-11]; King Dep., 164:1-7 [Doc. 27].

Director of Community Development, would be abolished and replaced by the position of Director of Community Services.  Whaler asked King if he would be interested in assuming the new position.  King told Whaler that, before making a decision, he would like to see the job description for the new position and discuss the opportunity with his wife.  Consequently, King requested that Whaler extend his paid administrative leave while he considered this proposal.[60]  Whaler responded by telling King to submit an e-mail requesting additional time "and I'll look at it, and I'll just make it official, and then I'll get you the job description."[61]

Per Whaler's instructions, King later e-mailed a memorandum requesting additional administrative leave, stating that he would "await [Whaler's] response to this memorandum."[62]  Whaler never responded to King's "Request for Administrative Leave"—with either a confirmation or the promised job description—and on January 20, 2009, Whaler terminated King for not returning to work.[63]  Whaler did not call or otherwise contact King before terminating him.[64]  As a probationary employee, King was not entitled to such notice, a hearing, or any specific procedures guaranteed by the civil service system.[65]

---

[60] King Dep., 163:19-167:14 [Doc. 27].
[61] *Id*. at 170:2-6.
[62] *Id*. at 170:2-13; Defs. Ex. 32 [Doc. 28-7].
[63] King Dep., 170:2-13 [Doc. 27]; Def. Ex. 32 [Doc. 28-7].
[64] Whaler Dep., Vol. I, 77:24-28:6 [Doc. 42]; Whaler Dep., Vol. III, 138:12-24 [Doc. 44].
[65] *See* Whaler Dep., Vol. I, 124:6-14, 159:13-25 [Doc. 42]; Brewer Dep., Vol. I, 123:19-24 [Doc. 33].

After King's termination, Singley, a white male, was promoted to Director of Community Development.[66]   Singley served in this position for approximately two years from June 2009 until his retirement in mid-2011.[67]   After Singley retired, the county advertised the position and hired Douglas Manning, a black male, to replace Singley.[68]

King amended his original EEOC Charge to include his termination on January 23, 2009.[69]   After concluding its investigation of King's charges, on March 16, 2010, the EEOC determined that its investigation "disclosed sufficient evidence to support Charging Party's allegations regarding race discrimination and that Charging Party's suspension and subsequent termination were pretext for discrimination."[70]

## PROCEDURAL HISTORY

After receiving a Notice of Right to Sue by the Equal Employment Opportunity Commission ("EEOC") on November 1, 2010, King filed suit against Butts County and Whaler on January 4, 2011, alleging race discrimination and retaliation under Title VII and 42 U.S.C. § 1981.   On May 25, 2012, Defendants filed the instant Motion for Summary Judgment.

---

[66] Lawson Dep., 26:18-22 [Doc. 36].
[67] Brewer Dep., Vol. I, 17:6-19:1 [Doc. 33].
[68] Id.
[69] King Dep., Ex. 45 [Doc. 45-6].
[70] King Resp., Ex. 2 [Doc. 46-2].

## DISCUSSION

In his Complaint, King claims that he was subjected to racial discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981 based on five key events: (1) Butts County's failure to promote King to the position of Deputy County Administrator; (2) King's suspension with pay on November 24, 2008; (3) the extension of King's suspension with pay on December 1, 2008; (4) the extension of King's suspension without pay on January 5, 2009; and (5) King's termination on January 20, 2009.  Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework."[71]  Thus, the Court will address King's Title VII claims with the understanding that the same analysis applies to his Section 1981 claims.

## I.    <u>Section 1981 Claims Against Butts County</u>

King brings retaliation and discrimination claims against Butts County under 42 U.S.C. § 1981 in Counts III and IV of his Complaint.  However, Section 1981 "does not provide an implicit cause of action against state actors; therefore § 1983 constitutes the exclusive federal remedy for violation of state actors of the rights guaranteed under § 1981."[72]  Because Butts County is a state actor, King's Section 1981 claims against it must fail.  Therefore, summary judgment is **GRANTED** on King's Section 1981 claims against

---

[71] *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

[72] *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)).

the County.  Whaler, in his individual capacity, is the only proper defendant to King's Section 1981 claims for wrongful termination under Counts III and IV.  These claims are evaluated below.

## II.    <u>Abandoned Claims</u>

In his Complaint, King alleges that Butts County's failure to promote him to the position of Deputy County Administrator was racially motivated in violation of Title VII.  King also alleges that his subsequent suspensions on November 24, 2008, and December 1, 2008, with pay, were motivated by similar racial animus and in retaliation for King's EEOC Charge and internal complaints of race discrimination.  However, King failed to pursue these claim in his response to the instant Motion, which explicitly and thoroughly seeks summary judgment as to all of King's claims.  Instead, King only addresses two "adverse employment actions" as evidence of Defendants' retaliation and discrimination: his subsequent suspension <u>without</u> pay and his ultimate termination.[73]  Accordingly, King has abandoned these claims, and Butts County's request for summary judgment as to these matters is **GRANTED**.[74]

---

[73] King Resp. at 10 [Doc. 46].

[74] *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in a complaint but not raised at summary judgment is deemed abandoned); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation omitted)).

## III.  Discrimination Claims

Title VII provides that an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex."   A plaintiff may support Title VII claims with direct evidence, circumstantial evidence, or statistical proof.[75]   "Direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption."[76]   In contrast, "[i]ndirect evidence is circumstantial evidence."[77]   King has offered no direct evidence or statistical proof in support of his claims.   As such, he must produce sufficient circumstantial evidence to support a prima facie case of discrimination.

As the Eleventh Circuit recently reiterated, "[t]here is more than one way to show discriminatory intent using indirect or circumstantial evidence."[78]   Most commonly, claims are evaluated under the burden-shifting framework developed in *McDonnell Douglas v. Green*.[79]   Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case, or "facts adequate to permit an inference of

---

[75] *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008).

[76] *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (alterations and quotation marks omitted).

[77] *Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999).

[78] *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

[79] 411 U.S. 792 (1973).

discrimination."[80]   If the plaintiff establishes a prima facie case, he has created an inference of discrimination, and the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions.   If the employer meets this "exceedingly light" burden, then the inference of discrimination is erased, and the burden shifts back to the plaintiff, who must show that the employer's proffered reasons proffered reasons were merely pretext for discrimination.[81]

With this analytical framework in mind, the Court addresses each of King's allegations.

### A.  *Suspension Without Pay on January 5, 2009*

King cannot establish that his disciplinary suspension without pay on January 5, 2009, was the result of Butts County's discriminatory animus.   To make out a prima facie case of discriminatory suspension, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated individual outside of his protected class.[82]   Butts County, the only party subject to this particular claim, concedes that King is a member of a protected class and, for purposes of summary judgment, that he was qualified for the position of Director of

---

[80] *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

[81] *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

[82] *Fowler v. Orange Cnty. Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Community Development.  In addition, the Court finds that King's ten-day suspension without pay amounts to an adverse employment action.[83]   Accordingly, the Court's analysis turns on the final prong of King's prima facie case.

Butts County argues that King has failed to identify a non-minority employee who was treated more favorably in similar circumstances.  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."[84]  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."[85]

King does not identify a comparator who was treated more favorably, but he argues that his ultimate termination and replacement by a white co-worker establishes his prima facie case.  In doing so, King attempts to compound separate incidents into one overarching prima facie case, which he summarily outlines in a single page of text.[86] King's approach confuses two discrete employment actions.  Arguments regarding King's replacement are better suited to his discriminatory termination claim, and the

---

[83] See, e.g., Silk v. City of Chicago, 194 F.3d 788, 805 n.17 (7th Cir. 1999) ("The only employment action in this case that could be considered a 'tangible' one is … [the] five-day suspension."); Dickerson v. SecTek, Inc., 238 F. Supp. 2d 66, 80 n.11 (D.D.C. 2002) ("[C]ourts have almost uniformly held that a disciplinary suspension for which the employee is not compensated … amounts to an adverse employment action.").
[84] Holifield, 115 F.3d at 1562.
[85] Id.
[86] See King Resp. at 10 [Doc. 46].

Court considers them in that context. Consequently, the Court finds that King has failed to provide any similarly-situated comparator or other evidence to advance his suspension-based claim. Moreover, King does not advance any other, specific evidence beyond his ultimate termination to suggest Butts County acted with discriminatory intent. As such, the Court **GRANTS** Butts County's request for summary judgment on King's claim of discriminatory suspension without pay.[87]

   **B.** *Termination on January 20, 2009*

   As with his suspension claim, King readily satisfies the first three prongs of his discriminatory termination claim. Again, King's prima facie case turns on the fourth prong of his prima facie case. As established above, King does not provide a similarly-situated comparator for the Court's consideration. However, on a discriminatory termination claim, a plaintiff may instead demonstrate that he was replaced by a person outside of his protected class.[88] Accordingly, King maintains that Singly, a white male, assumed King's position as Director of Community Development in essence, if not in name. In opposition, Defendants contend that Singley could not replace King because his position as Director of Community Development was wholly eliminated after King's termination. Reading the facts in the light most favorable to King, the Court finds that

---

[87] Even if King had successfully met his prima facie burden, his discriminatory suspension claim would fail. As discussed below in the context of King's related retaliation claim, King cannot demonstrate that Butts County's actions were mere pretext for discriminatory or retaliatory animus.
[88] *Maynard*, 342 F.3d at 1289.

King has established his prima facie.

The undisputed facts establish that King's title, Director of Community Development, was eliminated after his termination.  Thereafter, Singley was promoted to Director of Community Services, where he served for approximately two years, until mid-2011.[89]  After Singley's retirement, Butts County solicited applicants for the director position and selected Douglas Manning, a black male, as Singley's replacement.  The parties part ways, however, in their description of the "new" position.  Defendants cite Director Michael Brewer's testimony to suggest that many of King's previous planning and development duties were "shifted over to the zoning administrator" and other staff members consistent with the County's reconsolidation efforts.[90]  To rebut this evidence, King presents statements from Lawson, the Butts County Zoning Administrator, who asserts that any distinctions between the "old" and "new" position are superficial.  In her own words: "[W]e've gone through several names for our department; it started with community services, then it went back to community development and then it's now it's back to community services department."[91]  When asked if Singly replaced King, Lawson responded with a succinct, "Yes, sir."

---

[89] Defendants' assert that Singley was promoted on an "interim basis," and, therefore, not King's true replacement.  However, Singley's employment as an interim or permanent replacement does not affect the outcome of the Court's analysis.  *See Catchings v. Hooper's Trailer Sales, Inc.*, No. 5:06-CV-418(HL), 2008 WL 687320, at *7 (M.D. Ga. Mar. 11, 2008).

[90] Brewer Dep., Vol. I, 15-16:2-9 [Doc. 33].

[91] Lawson Dep., Vol. I, 27:3-14 [Doc. 36].

King, as a non-moving party, must "designate specific facts showing that there is a genuine issue for trial."[92]   In this instance, he has successfully carried his burden.   King has pointed to testimonial evidence that that he was replaced by a white male.   In accordance with the summary judgment standard, the Court must avoid "weighing conflicting evidence or making credibility determinations" for "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[93] In his testimony, Brewer expressly states that several of King's prior duties were subsumed by Lawson as zoning administrator, so it logically follows that Lawson would be acquainted with her own responsibilities as well as those of the director she reports to—King, when he was Director of Community Development, and Singley as Director of Community Services.   Drawing a reasonable inference in favor of King, the Court finds that Singley replaced King.

Although King has established his prima facie case, Defendants have presented a legitimate, nondiscriminatory reason for terminating King.   At this stage, the Defendants must "clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason must be legally sufficient

---

[92] *Catrett*, 477 U.S. at 324-25.
[93] *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

to justify a judgment for the defendant."[94]  Again, Defendants' burden is "exceedingly light" and is satisfied as long as the employer articulates a reasonable, non-discriminatory basis for its actions.[95]   "The employer's burden is merely one of production, not of persuasion."[96]

In this case, Defendants proffer only one basis for Whaler's decision to terminate King—King's failure to report to work on January 20, 2009.[97]  While King contends that he had permission to remain on administrative leave, Defendants allege that Whaler and the Board of Commissioners expected King to return.  For this reason, Defendants viewed King's actions on January 20, 2009, as job abandonment.  The Court finds that Defendants' proffered reason is a legitimate reason to terminate an employee that does not relate to King's race.  Consequently, Defendants' articulation of this legitimate, nondiscriminatory reason rebuts King's prima facie case of discrimination.[98]

---

[94] *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)) (internal quotation marks omitted).

[95] *Vessels v. Atlanta Ind. Sch.Syst.*, 408 F.3d 763, 769-70 (11th Cir. 2005).

[96] *See Kondrak v. Principi*, 161 F. App'x 817, 819 (11th Cir. 2005).

[97] King's termination letter includes other reasons for his dismissal, including a deficient performance review and the "disciplinary infractions" that led to King's ten-day suspension without pay.   Brewer Dep., Vol. I, Ex. 12 [Doc. 33-12].  These additional reasons are not inconsistent with Defendants' ultimate reason for dismissing King: his failure to return to work on January 20, 2009.  *See Tidwell v. Carter Prod.*, 135 F.3d 1422, 1428 (11th Cir. 1998) (The "existence of a possible additional nondiscriminatory basis for … termination does not [ ] prove pretext.").

[98] *See Bryant*, 575 F.3d at 1308.

King has the opportunity to demonstrate that Defendants' articulated reason for termination is "mere pretext for discrimination."[99]   To demonstrate pretext, a plaintiff must present significantly probative evidence of discriminatory animus "either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief."[100]   The inquiry "centers upon the employer's beliefs, and not the employee's own perception of his performance."[101]   While King insists that he had permission to remain on administrative leave, "assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence."[102]   It is undisputed that King had previously been directed to return to work on January 20, 2009, and that he e-mailed a "Request for Administrative Leave" to Whaler on January 19, 2009, stating that he would "await [Whaler's] response to this memorandum."[103]   Whaler never responded to King's e-mail—with a job description or otherwise—but, nevertheless, King did not report to work on January 20th.

---

[99] *Holifield*, 115 F.3d at 1565.

[100] *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003); *see Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997).

[101] *Holifield*, 115 F.3d at 1565.

[102] *Id.*

[103] King Dep., 170:2-13 [Doc. 27]; Defs. Ex. 32 [Doc. 28-7].

To the extent King finds certain inconsistencies in Whaler's deposition testimony, this evidence does not demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendants'] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."[104]   Whether Whaler told King that he would present King's written request for administrative leave to the Butts County Board of Commissioners or not is a distinction without difference; in both scenarios, Whaler told King that he did not have the authority to extend King's administrative leave.  And to be frank, "it is irrelevant whether [King] believed he had permission not to return … so long as [Defendants'] reason for termination was not discriminatory."[105]

Reading the facts in the light most favorable to King, Whaler's vague statements caused King to misunderstand his obligation to return to work on January 20th.  But no matter how unfair this outcome may seem, Whaler's poor communication cannot support King's discriminatory termination claim.  "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."[106]   Employers "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long

---

[104] *McCann v. Tillman*, 526 F.3d 1370, 1375-76 (11th Cir. 2008).

[105] *Louissant v. Westminster Cmty. Care Servs., Inc.*, No. 604CV-1631ORL-18JGG, 2006 WL 3264406, at *3 (M.D. Fla. Nov. 7, 2006); *accord Mason v. Mitchell's Contracting Servs., LLC*, 816 F. Supp. 2d 1178, 1199-1200 (S.D. Ala. 2011).

[106] *Damon*, 196 F.3d at 1363 n.3.

as its action is not for a discriminatory reason."[107]   There is no evidence in the record that supports King's allegations that he was fired because of his race.   Thus, King has not produced sufficient evidence to create a genuine issue of material fact as to whether Defendants' reasons for his termination were pretextual.[108]   Accordingly, the Court **GRANTS** Defendants' request for summary judgment on King's discriminatory termination claim.

### C. *Mosaic Theory*[109]

Given the escalating series of events in this case and King's tendency to present these events as one cumulative, discriminatory action, the Court is compelled to address an alternative, though ultimately unavailing, avenue for King's claims: the Eleventh Circuit's newly-articulated "mosaic" theory.   In *Smith v. Lockheed-Martin Corporation*,[110] the Eleventh Circuit reiterated that "establishing the elements of the *McDonnell Douglas* framework is not, and was never intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination

---

[107] *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984); s*ee Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (noting that employers may make decisions based on mistakes or lies so long as the decision is not based on a discriminatory reason).

[108] King's prima facie case, standing alone, is not sufficient evidence to conclude that Defendants unlawfully terminated him because of his race.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

[109] Neither party addresses this argument in their respective briefs.

[110] 644 F.3d 1321 (11th Cir. 2011).

case."[111]   Rather, the court noted that a plaintiff may present a triable issue if he establishes "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."[112]   *Smith* involved the termination of a white supervisor for distributing a racially-insensitive e-mail targeting blacks during a time in which his employer was subjected to intense public scrutiny regarding its purported tolerance of racial hostility against blacks by whites in the workplace in relation to an apparently racially-motivated mass shooting by a white supremacist employee.[113]   The Eleventh Circuit decided that the plaintiff could survive summary judgment despite the fact that he could not identify a proper comparator because the plaintiff produced a significant evidentiary record that the defendant had considered the plaintiff's race in its decision to terminate him.   The evidence in *Smith* included (1) a documented history of disparate treatment of white and black employees; (2) a spreadsheet listing the employees by name and race, which was used to make disciplinary decisions; (3) a new program reporting defendant's struggles with racism in the workplace; and (4) a backdrop of racial tension following a workplace shooting.[114]

There is nothing comparable in the record currently before the Court.   Although King experienced a number of unsettling employment decisions, the Court finds that

---

[111] *Id.* at 1328.

[112] *Id.*

[113] *Id.* at 1324, 1329-35.

[114] *Id.*

this evidence is not sufficient to establish the "convincing" mosaic of racially-related evidence envisioned by the Eleventh Circuit.   Therefore, the Court concludes that King's discrimination claims fail as a matter of law.

## IV.   <u>Retaliation Claims</u>

Parallel with his discrimination claims, King also alleges that Defendants unlawfully retaliated against him for filing and updating his EEOC Charges by (1) suspending him without pay on January 5, 2009, and (2) terminating his employment on January 20, 2009.[115]  Retaliation claims follow the familiar *McDonnell Douglas* burden-shifting framework outlined above with a slight deviation on the prima facie test: to establish a prima facie case of retaliation a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity.[116]

Defendants concede that King suffered adverse employment actions and that these actions were causally related to King's alleged protected activity.   However, they assert King's participation in the EEOC grievance process does not qualify as a

---

[115] Based King's Complaint and the analysis above, King's remaining retaliatory suspension claim only applies to Butts County (Count II), while his retaliatory termination claims apply to both Butts County and Whaler, in his individual capacity (Counts II and IV).   Although King separately brings his retaliatory termination claims under Title VII and Section 1981, as noted above, the Court's analysis of claims under these statutes is the same.

[116] *Harper v. Blackbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998).

protected activity because he lacked a good faith, reasonable basis for filing charges against Butts County and Whaler.  Defendants' only authority for this assertion is a Third Circuit opinion and various policy arguments.[117]  In light of prior, binding Fifth Circuit precedent, the Court disagrees.  This conclusion is consistent with other Eleventh Circuit district court decisions.[118]

As a general premise, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigating, proceeding, or hearing under this subchapter."[119] Accordingly, a disgruntled employee may bring a retaliation claim under Title VII through either the "opposition clause" or the "participation clause."  Filing an EEOC Charge and subsequently assisting in the EEOC's investigation qualifies as "participation" activity.[120]  In its division of these two clauses, the Eleventh Circuit has expressly required the employee to demonstrate a good faith, reasonable belief that his employer engaged in unlawful activity to qualify for protection under the opposition clause.  The Eleventh Circuit has not addressed whether the employee must carry a

---

[117] *See Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3rd Cir. 2006).

[118] *See, e.g., Booth v. Pasco Cnty. Fla.*, 829 F. Supp. 2d 1180 (M.D. Fla. 2011).

[119] 42 U.S.C. § 2000e-3(a) (emphasis added).

[120] *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

similar burden under the participation clause.[121]

Although some courts, like the Third Circuit, have applied the good faith requirement to the participation clause, a majority of circuits have declined to do so.[122] Most importantly, however, one of the leading cases supporting an opposing view is binding authority on this Court: *Pettway v. American Cast Iron Pipe Co.*, 411 F.3d 998 (5th Cir. 1969).  In *Pettway*, the Fifth Circuit emphasized that the EEOC complaint procedure was designed to give vulnerable employees the ability to protest unjust employment practices by their much more powerful and resourceful employers without fear of retaliation.[123]  In addition, the court noted that charges against employers are typically drafted by laymen who are not legally trained and, accordingly should be given certain lenience.  Moreover, the court reasoned that Title VII protections would "acquire[ ] a precarious status" if employers were entitled to discharge employees upon determining that an employee's charge was unreasonable.[124]  Addressing these concerns, the court held that a complaint should be protected even if the employee includes false or "malicious material" therein.[125]  As such, the court declined to impose a good faith and

---

[121] *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998) ("[W]e need not decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement.").

[122] *See, e.g., Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000); *Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999); *Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir. 1994).

[123] 411 F.2d at 1005.

[124] *Id.*

[125] *Id.* at 1007.

reasonableness requirement on the participation clause of Title VII.

Based on the Fifth Circuit's holding in *Pettway*, the Court declines to impose a good faith and reasonableness requirement on the anti-retaliation participation clause. Consequently, because King has filed an EEOC complaint against Defendants and has otherwise assisted in the EEOC's investigation, he has engaged in protected activity and demonstrated a prima facie case for retaliation.[126]

Upon establishment of a prima facie case, the burden of proof first shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.[127]   If the employer meets this burden, the burden of retaliation disappears, and the plaintiff must demonstrate that the employer's reason is "pretext for prohibited retaliatory conduct."[128]   Given this familiar framework, the Court dispenses with King's retaliatory termination claim.   As with his discriminatory termination claim, King cannot prove that Defendants terminated King's employment as retaliation for filing and continuously updating his EEOC Charge.[129]   Consequently, the Court is left with King's final claim: retaliatory suspension without pay for ten days, beginning January 5, 2009.

---

[126] Defendants concede the other two prongs of King's prima facie case: (1) adverse employment actions and (2) a causal relationship between the adverse employment actions and King's protected activity.

[127] *Brown v. City of Opelika*, 211 F. App'x 862, 864 (11th Cir. 2006).

[128] *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).

[129] Defendants and King do not offer any additional or distinct reasons for Defendants' employment decision or evidence of pretext in relation to King's retaliatory termination claim; as such, the Court incorporates the above discriminatory termination analysis.

Whaler claims that he suspended King for ten days without pay based on an independent investigation by Mae Okwandu, a former investigator for the Georgia Commission on Equal Employment Opportunity Office.   Following Okwandu's analysis, Whaler determined that King violated four provisions of the Butts County Personnel Ordinance by (1) making inappropriate racial remarks to Stodghill, another black employee, which fostered a hostile working environment; (2) delegating inappropriate assignments to Stodghill; (3) threatening Stodghill's continued employment; and (4) willfully disobeying Whaler's direct instructions not to discuss Stodghill's complaints with her.   Thus, Defendants have articulated a legitimate, non-retaliatory reason for King's suspension, and the burden shifts to King to demonstrate that Defendants' proffered reasons are pretext for retaliation.[130]

King attempts to show that Defendants' proffered reasons are pretext for retaliation by challenging the reasonableness of the independent investigator's and Whaler's conclusions.   King asserts (1) racially-charged statements between black employees cannot create a hostile work environment; (2) he delegated appropriate assignments to Stodghill; (3) Stodghill was not personally threatened by King and did not want to file a formal complaint; and (4) Whaler never told him not to discuss Stodghill's allegations with her during the November 24th meeting.   These allegations

---

[130] *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001); *Johnson*, 234 F.3d at 507 n.6.

do not create a genuine issue of material fact regarding whether Defendants' actions were pretext for retaliation.[131]

To show pretext, King must meet each of Defendants' reasons "head on" and rebut them, "and the employee cannot succeed by simply quarreling with the wisdom of that reason."[132]  King has not rebutted Defendants' assertion that Stodghill reported his conduct and statements to Whaler, nor has he rebutted the fact that Whaler and Okwandu, upon investigation, determined that King's actions were inappropriate.  It makes no difference that Stodghill originally reported King's conduct to a coworker rather than Whaler or that she never intended to file a formal complaint.  An employer need not wait for a formal filing before it investigates alleged misconduct; in fact, it behooves the employer to act immediately.[133]  The Court will not second-guess Whaler's assessments and ultimate decision; "[w]e are not interested in whether the conclusion is a correct one, but whether it is an honest one."[134]  Despite his objections to Whaler's decision, King has not demonstrated that Defendants suspended him in retaliation for filing and updating his EEOC Charge.

In short, this Court is compelled to conclude that King's evidence and his

---

[131] *See Tidwell*, 135 F.3d at 1427.

[132] *Chapman v. AI Transp.*, 229 F.3d 1012, 1030, 1037 (11th Cir. 2000).

[133] *See Chambers v. Wal-Mart Stores, Inc.*, 70 F. Supp. 2d 1311, 1323 (N.D. Ga. 1998) (finding employer had no legal obligation to investigate informal complaint, though noting that it may have been a "good business practice" to do so).

[134] *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266-1267 (11th Cir. 2010).

subjective interpretation of events could not convince a reasonable factfinder to reject the County's reasons for its employment action or, importantly, conclude that retaliation actually motivated King's suspension without pay.

## CONCLUSION

As set forth above, Defendants' Motion for Summary Judgment [Doc. 25] is **GRANTED**.

**SO ORDERED,** this 29th day of March, 2013.

> S/  C. Ashley Royal
> C. ASHLEY ROYAL, CHIEF JUDGE
> UNITED STATES DISTRICT COURT

BBP/lmh